1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11 | MICHAEL M.,                          Case No.:  3:19-cv-00934-AHG

12 |                          Plaintiff,  **ORDER RESOLVING JOINT**
                                          **MOTION FOR JUDICIAL REVIEW**
13 | v.                                   **AND AFFIRMING THE**
                                          **COMMISSIONER'S FINAL**
14 | ANDREW SAUL,                         **DECISION**
   | Commissioner of Social Security,
15 |                                      **[ECF No. 26]**
   |                         Defendant.
16

17
18
19
20
21
22
23
24
25
26
27
28

1

On May 20, 2020, Plaintiff Michael M. ("Plaintiff") and Defendant Andrew Saul, Commissioner of Social Security, ("Defendant" or "Commissioner") filed a Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security ("Joint Motion") pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision by the Commissioner of Social Security denying Plaintiff's application for supplemental security income. ECF No. 26.

After a thorough review of the Joint Motion, the administrative record, and applicable law, the Court **AFFIRMS** the Commissioner's denial of supplemental security income.

## I.   **PROCEDURAL BACKGROUND**

On March 31, 2015, Plaintiff filed an application for a supplemental security income ("SSI") under Title XVI of the Social Security Act, alleging disability beginning December 31, 2010. *See* Certified Administrative Record ("AR") 193-213, ECF No. 16-2. Plaintiff's application was denied at the initial level on August 28, 2015, and again denied upon reconsideration on January 26, 2016. AR 83-118, 131-135. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on March 16, 2016, and the hearing was held before the ALJ on November 16, 2017. AR 138-140, 37-82.

On April 2, 2018, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled as defined under section 1614(a)(3)(A) the Social Security Act, and accordingly denying supplemental security income. AR 19-31. The Appeals Council denied Plaintiff's request for review and affirmed the ALJ's decision on March 27, 2019, (AR 1-3), making the ALJ's opinion the final decision of the Commissioner. On May 18, 2019, Plaintiff timely commenced the instant appeal seeking judicial review of the Commissioner's final decision pursuant to *See* 42 U.S.C. § 1383(c). ECF No. 1.

## II.   **SUMMARY OF ALJ'S FINDINGS**

To determine whether Plaintiff is disabled and entitled to supplemental security income under Section 1614(a)(3)(A) of the Social Security Act (42 U.S.C. § 1383(c)), the ALJ performed the required five-step sequential evaluation process governing SSI claims:

2

(1) whether the claimant is involved in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that is "severe"; (3) whether the claimant's impairments meet or equal one of the listed impairments; (4) whether the claimant can still perform his past relevant work given his residual functional capacity despite his impairment(s); and (5) if the claimant cannot perform past relevant work, whether the claimant can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 416.920(a). The five steps are addressed in order, but the ALJ is not always required to go through all five steps of the process. Specifically, an affirmative answer at steps one or four (whether the claimant is currently engaged in substantial gainful activity or can perform past relative work), or a negative answer at step two (whether the claimant has an impairment or combination of impairments that is severe), would immediately lead to a finding of non-disability, and the analysis would stop there. Conversely, an affirmative answer at step three (whether the claimant's impairments meet a listing) would immediately lead to a finding of disability, also ending the analysis. *Id; see also Garfield v. Schweiker*, 732 F.2d 605, 607 n.2 (7th Cir. 1984).

At step one, the ALJ was required to determine whether Plaintiff had engaged in substantial gainful activity ("SGA") since March 31, 2015, the date he filed for SSI.[1] 20 C.F.R. § 416.920(b). SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. § 416.972. "Substantial work activity is work activity that involves doing significant physical or mental activities." C.F.R. § 416.972(a). "Gainful work activity is work activity that you do for pay or profit." C.F.R. § 416.972(b). The ALJ concluded Plaintiff had not engaged in SGA since his application date. AR 21.

At step two, the ALJ must determine whether Plaintiff has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.920(c). A

---

[1] Even if an SSI claimant is ultimately found disabled and entitled to SSI, SSI is not payable to a claimant prior to the month following the month in which the application was filed. 20 C.F.R. § 416.355.

"severe" impairment is one that significantly limits physical or mental ability to do basic work activities. *Id.* The ALJ concluded the Plaintiff had the following "severe" impairments: carpal tunnel syndrome (left greater than right), obesity, a general anxiety disorder, a bipolar spectrum disorder, a post-traumatic stress disorder, and a borderline personality disorder. AR 21.

At step three, the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I ("the listings"). The listings describe impairments that the Social Security Agency ("SSA") considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). A claimant's impairment may also be considered "medically equivalent" to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 416.926(a). If a claimant's impairments meet or medically equal any of the listings, the ALJ will find the claimant disabled. *See* 20 C.F.R. § 416.920(d). Here, the ALJ concluded that none of Plaintiff's impairments or any combination of his impairments met or medically equaled the severity of one of the listings. AR 22-23.

Before considering whether Plaintiff could perform past relevant work at step four, the ALJ must first determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(e). A claimant's RFC is ". . . the most [the claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017). A claimant's RFC is based on all relevant evidence in the case record. 20 C.F.R. § 416.945(a)(1).

Based on his evaluation of the medical and opinion evidence in the record, the ALJ determined that Plaintiff:

> . . . has the residual functional capacity to perform medium work as defined in 20 C.F.R. [§] 416.967(c) except the claimant can lift and carry 50 pounds occasionally and 25 pounds frequently; he can sit for 6 hours out of an 8-hour day, and stand and/or walk for 6 hours out of an 8-hour day, with normal

breaks; he can frequently push, pull and operate hand controls with the bilateral upper extremities; he cannot climb ladders, ropes, and scaffolds; he can frequently balance, stoop, kneel, crouch, and crawl; he can frequently handle, finger, and feel bilaterally; he must avoid concentrated exposure to extreme cold and vibration; he must avoid even moderate exposure to fumes, dust, odors, and other pulmonary irritants; he can do unskilled tasks at all appropriate reasoning levels per [the Dictionary of Occupational Titles], he can perform those tasks at an adequate pace for an 8-hour work day with normal breaks; he can only occasionally interact with coworkers and supervisors; he should have no contact with the general public; and he can tolerate only occasional changes in the work setting.

AR 23-24.

The ALJ stated that in reaching this conclusion, he considered all of Plaintiff's reported symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the evidence of record, including the objective medical evidence, as well as the opinion evidence of record. AR 24.

At step four, the ALJ had to determine whether, given his RFC, Plaintiff could perform his past relevant work as a janitor or an election clerk. *See* 20 C.F.R. §§ 416.920(f), 416.965. *See also* AR 29. Based on Plaintiff's documented vocational background and the testimony of both Plaintiff and the vocational expert ("VE") at the November 16, 2017 hearing on Plaintiff's application, the ALJ found that Plaintiff's RFC would make him unable to perform any of his past relevant work. AR 29; *see also* AR 74-76 (VE testimony that Plaintiff could not perform any of his past jobs based on a hypothetical RFC that matches the ALJ's ultimate RFC determination).

At step five, the burden shifted to the ALJ to determine whether Plaintiff could perform any other work considering his RFC, capacity, age, education and work experience. 20 C.F.R. § 416.920(g). To meet that burden, the ALJ must establish evidence Plaintiff could perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c). Here, based on the VE testimony and Plaintiff's RFC, the ALJ concluded that Plaintiff could perform jobs existing in the national economy, including the jobs of machine tender, dishwasher, and warehouse worker. AR 30.

Accordingly, the ALJ found that Plaintiff has not been disabled since March 31, 2015, the date of his SSI application. AR 30-31.

## III.   **STANDARD OF REVIEW**

The Court reviews the Commissioner's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied and, if so, the Court must affirm the Commissioner's decision. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001).

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether the Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).

6

1

## IV.   PARTIES' POSITIONS

Plaintiff's sole claim of error on appeal is that the ALJ erred by failing to provide specific and legitimate reasons for giving only "partial weight" to the opinion of Dr. Thomas Schweller, a neurologic consultative examiner who assessed Plaintiff as part of his SSI application process, in determining the RFC limitations related to (1) Plaintiff's lifting and carrying restrictions, and (2) Plaintiff's handling, fingering, and feeling restrictions. *See* ECF No. 26 at 4-9. *See also* AR 27 (the ALJ discussing Dr. Schweller's opinion); AR 465-67 (Dr. Schweller's opinion).

In particular, Plaintiff notes that Dr. Schweller opined that Plaintiff should be limited to lifting 20 pounds occasionally and 10 pounds frequently (light work restrictions), and limited to only occasional fingering and fine manipulation with both hands. AR 466-67. These recommendations were not fully adopted by the ALJ in his RFC determination, which limits Plaintiff to the more demanding medium work restrictions of lifting and carrying up to 50 pounds occasionally and 25 pounds frequently, as well as frequent handling, fingering, and feeling bilaterally. AR 24.

The disputed limitations that the ALJ adopted in the RFC match those recommended by the non-examining physical consultants who assessed Plaintiff's SSI application at the initial and reconsideration levels, respectively. *See* AR 92-93, 109-11. The ALJ gave great weight to these assessments, finding them "consistent with the medical evidence and the claimant's subject complaints, where the claimant had obesity and carpal tunnel syndrome, yet had 5/5 motor strength in his bilateral upper and lower extremities." AR 27. Further, the ALJ noted that Plaintiff "could perform a range of daily activities including personal care, preparing simple meals, sweeping, and vacuuming." *Id.* Consistent with this analysis, the ALJ afforded only partial weight to Dr. Schweller's opinion on the basis that "it is inconsistent with his examination and the medical evidence, where the claimant had 5/5 motor strength in his bilateral upper and lower extremities." *Id.* As for his rejection of Dr. Schweller's recommended limitation of only occasional fingering and fine manipulation, the ALJ explained that he "finds an ability to perform manipulative activities frequently

adequately accounts for the claimant's carpal tunnel syndrome, where he has not had surgery and continues to have the ability to dust, mop, do laundry, and take out the trash." *Id.*

Plaintiff argues that the ALJ's decision to afford greater weight to the opinions of the non-examining physicians than he gave to Dr. Schweller's opinion constitutes reversible error, because opinions of examining physicians are entitled to greater weight than those of non-examining physicians unless the ALJ gives specific, legitimate reasons for rejecting the former. Plaintiff contends that the ALJ's stated reasons for discounting Dr. Schweller's opinion are not specific and legitimate, because (1) Dr. Schweller took into account Plaintiff's 5/5 motor strength when devising his RFC opinion; (2) Dr. Schweller's recommended manipulative limitations are consistent with the medical evidence of record, as demonstrated by the fact that the non-examining physicians also recommended limitations on Plaintiff's fingering and fine manipulation due to his carpal tunnel syndrome (although their recommended limitations were less restrictive); (3) Plaintiff's ability to dust, mop, do laundry, and take out the trash does not require frequent fine manipulation or fingering; and (4) before giving greater weight to the non-examining physicians' opinions, the ALJ was required to evaluate the factors set forth in 20 C.F.R. § 416.927(c), including the examining relationship and Dr. Schweller's specialization, which the ALJ failed to discuss. ECF No. 26 at 6-8.

In response, Defendant first notes that even if the ALJ had adopted Dr. Schweller's opinion that Plaintiff is limited to only occasional fingering and fine manipulation, such a restriction would not have changed the outcome at step five of the disability evaluation, because one of the jobs identified by the ALJ as a job that Plaintiff could still perform (dishwasher) requires only occasional fingering, and another (machine tender) requires none. ECF No. 26 at 10. Therefore, even if the Court found error in the ALJ's failure to include Dr. Schweller's recommended restriction of only occasional (rather than frequent) handling, fingering, and feeling bilaterally in Plaintiff's RFC, such error would be harmless. *Id.*

Second, Defendant argues that the ALJ gave several valid reasons, supported by substantial evidence, for discounting the degree of lifting and fine manipulation limitations recommended by Dr. Schweller. *Id.* at 11-12. Specifically, Defendant points out that the ALJ found Dr. Schweller's assessed restrictions were not entirely consistent with the doctor's own examination findings—in particular, the finding that Plaintiff had full strength at 5/5 in all extremities. Defendant thus argues the ALJ reasonably concluded that Plaintiff could lift more than 20 pounds. *Id.* Next, Defendant argues that the ALJ properly concluded that the degree of limitation assessed by Dr. Schweller was not consistent with the overall record. In support of that argument, Defendant points to several different pieces of record evidence, including: (1) treatment records from treating physician Dr. Razooki, who found that Plaintiff had full 5/5 motor strength at every examination, including wrist flexion and extension, that Plaintiff had no muscle atrophy, and that Plaintiff had no muscle injuries impacted his ability to work or keep up with work requirements, other than some limitation in performing overhead activities (citing AR 380-82, 493-96, 566-68); (2) as the ALJ noted, Plaintiff had not had carpal tunnel surgery, and the record contained no evidence of treatment for carpal tunnel syndrome or any related symptoms (citing AR 25, 27); (3) aside from a 2002 diagnosis of carpal tunnel syndrome, there is no other record evidence of treatment of that impairment—Plaintiff took no medications for his pain, did not recall ever doing physical therapy for his condition, and denied wearing braces or other devices (citing AR 69-70). ECF No. 26 at 12-13. Therefore, Defendant argues that the ALJ "appropriately found Dr. Schweller's limitations to be overly restrictive in light of the overall record." *Id.* at 13.

Third, Defendant argues that the non-examining physicians' opinions constitute substantial evidence supporting the ALJ's RFC determination, because they are consistent with independent clinical findings and other evidence in the record. *Id.* at 13-14. Finally, Defendant contends that the ALJ's discussion of Plaintiff's daily activities, and his conclusion that they called into question the degree of limitation Dr. Schweller assessed,

also constitutes substantial evidence supporting the ALJ's decision to discount Dr. Schweller's opinion. *Id.* at 14-15.

In reply, Plaintiff disagrees that the outcome of the disability analysis would have been the same had the ALJ adopted the "occasional" fine manipulation limitation assessed by Dr. Schweller. Plaintiff points to testimony of the vocational expert during the hearing before the ALJ, stating that no work would exist for a person with both the restriction to light work and the restriction to only occasional fine manipulation. *Id.* at 16.

Next, Plaintiff argues that, although it is true that Dr. Schweller assessed 5/5 motor strength in all of Plaintiff's extremities, his examination also showed positive Tinel's at both wrists and decreased sensation along both palms, left greater than right. *Id.* at 17. Plaintiff asserts these findings support the adoption of the more restrictive fine manipulation limitation. Plaintiff also disputes Defendant's contention that the degree of limitation recommended by Dr. Schweller is inconsistent with the overall record, explaining that all three physicians agree that Plaintiff is limited in handling and fingering. *Id.*

As for the record evidence cited by Defendant, such as the Disability Benefits Questionnaire completed by Dr. Razooki and submitted as part of Plaintiff's health summaries (AR 377-82), Plaintiff argues that Dr. Razooki's evaluation was incomplete because it "failed to assume positive Tinel's in both wrists, with decreased sensation along both palms, left greater than right." ECF No. 26 at 18. Plaintiff contends that the evidence of those symptoms is "uncontradicted by the ALJ" and thus Dr. Razooki's incomplete evaluation is insufficient to discredit Dr. Schweller's opinion. Plaintiff further notes that, although there is little evidence of treatment for Plaintiff's carpal tunnel syndrome in the record, he was told by the VA that there was no treatment available. *Id.* (citing AR 476). Plaintiff also cites to his own hearing testimony that he did previously wear wrist braces when he slept due to the carpal tunnel syndrome. *Id.*

Plaintiff next argues that, because the limitations suggested by the non-examining physicians differed from those suggested by the examining physician, "20 C.F.R. §

416.927(c)(1) and *Orn*'s hierarchy [explaining that treating physicians' opinions are entitled to greater weight than those of non-treating physicians] should have been applied in favor of Dr. Schweller." ECF No. 26 at 19.

Finally, Plaintiff argues that there is "no evidence" that he uses greater than occasional fine manipulation in carrying out his daily activities of vacuuming, doing laundry, mopping, cleaning, sweeping, dusting, taking out the trash, driving, washing dishes, shopping, writing in his journal, preparing simple meals, and using Facebook, and that no other reasonable interpretation exists. *Id.* at 19-20.

For the reasons discussed below, the Court finds the ALJ did not commit any reversible error, and will accordingly **AFFIRM** the decision of the Commissioner.

## V.   <u>DISCUSSION</u>

Plaintiff argues that the ALJ erred by discounting the opinion of Dr. Schweller, an examining physician, in favor of the opinions of the agency's non-examining physicians, without providing specific, legitimate reasons for doing so. To provide clearer context, the Court will briefly describe all three physicians' opinions.

Dr. Schweller examined Plaintiff on July 24, 2015, providing a neurological consultation in connection with Plaintiff's SSI application. AR 465-67. In his examination summary, Dr. Schweller notes that Plaintiff "was diagnosed with carpal tunnel syndrome in 2002, left greater than right. He did not have surgery. He had a laceration of the left palm as a child and has aggravated pain with power grip of the left hand that may give him three days of discomfort." AR 465. On physical examination, Dr. Schweller found that Plaintiff's motor strength was "5/5 in the upper and lower extremities[,]" and that his "Jamar grip on the right was 55 pounds and the left was 20 pounds. He was right handed." AR 466. Further, Dr. Schweller found that sensation "showed positive Tinel's at both wrists, with decreased sensation along both palms, left greater than right." *Id.* Dr. Schweller also tested Plaintiff's deep tendon reflexes and stated an impression of "[b]ilateral median neuropathy at the wrists, left greater than right." *Id.* In his functional capacity assessment, Dr. Schweller opined in relevant part that Plaintiff "would be able to lift 20 pounds

3:19-cv-00934-AHG

occasionally and 10 pounds frequently, with no limits in bending, stooping, squatting, kneeling or crawling. He would have no reaching limits or gross handling limits, but would have occasional limits in fingering and fine manipulation with both hands." AR 466-67.

In August 2015, non-examining agency physician Dr. Mazuryk assessed Plaintiff's physical residual functional capacity at the initial level of consideration of Plaintiff's application. AR 92-94. Based on a review of the medical evidence of record, including Dr. Schweller's examination summary, Dr. Mazuryk opined that Plaintiff's RFC permitted him to lift and/or carry 50 pounds occasionally and 25 pounds frequently. AR 109. Although Dr. Mazuryk found Plaintiff was limited in both gross manipulation (handling) and fine manipulation (fingering) due to his carpal tunnel syndrome, the recommended limitation was "frequent" (as opposed to constant or unlimited). AR 110-11. Dr. Mazuryk also provided a narrative explanation for not adopting Dr. Schweller's recommended limitations:

> [Dr. Schweller's] [e]xam was significant for bilateral positive Tinel signs; reduced sensation to both palms. There was no mention of any thenar or hypothenar atrophy. [Dr. Schweller's recommendation] was for light work, but eroded by limitation of fingering/fine manipulation to occasional for both hands. Given the lack of thenar atrophy, and no [treating physician medical evidence of record] to show ongoing severe symptomatology, I think limiting manipulatives to frequent bilaterally is sufficient. [Plaintiff] could probably lift to medium work.

AR 89.

Similarly, elsewhere Dr. Mazuryk noted that Dr. Schweller's assessment was "given other weight [as opposed to great weight] as it is somewhat overly restrictive in terms of lifting restriction (normal motor strength) and manipulative restriction (no thenar/hypothenar atrophy)." AR 92.

At the reconsideration level, non-examining agency physician Dr. Estrin completed the physical RFC assessment based on the medical evidence of record. AR 109-112. Dr. Estrin recommended the same restrictions as Dr. Mazuryk, including Dr. Mazuryk's rationale for not fully crediting Dr. Schweller's assessed restrictions. *See* AR 109, 112. In

12

the "RFC – Additional Explanation" portion of the physical RFC evaluation, Dr. Estrin noted that Dr. Schweller's handling/fingering restriction to "occasionally" is "unsupported" because Plaintiff's physical examination showed good grip strength and a motor strength of 5/5 on both upper and lower extremities. AR 111. Accordingly, Dr. Estrin concluded that an RFC including frequent handling and fingering was "reasonably based on total [medical evidence of record]." *Id.*

As discussed, Plaintiff contends that the ALJ erred by adopting the non-examining physicians' lifting, carrying, and fine manipulation limitations over Dr. Schweller's more restrictive limitations.

Under the regulations, the opinion of an examining, but non-treating physician is generally given deference over the opinion of a non-examining, non-treating physician. *See* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."). "An ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). However, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831. Rather, opinions of non-examining physicians may only serve as substantial evidence "when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

To determine whether the ALJ met this standard, the Court will address the ALJ's reasons for discounting Dr. Schweller's opinion regarding Plaintiff's lifting, carrying, and fine manipulation limitations.

\\

### A. Fine Manipulation Restrictions

As a preliminary matter, the Commissioner correctly notes that, even if the ALJ had limited Plaintiff to only occasional fine manipulation (handling, fingering, and feeling bilaterally), Plaintiff would still be able to perform the jobs of dishwasher and machine tender identified by the ALJ at step five of his analysis as jobs that Plaintiff could still perform given his RFC. *See* AR 30; DICOT 318.687-010 (DOT listing for the Dishwasher job identified by the VE and the ALJ, stating that the job requires only occasional fingering); DICOT 921.686-014 (DOT listing for the Machine Tender job identified by the VE and the ALJ, stating that fingering is "not present" as part of the job). Although the warehouse worker job does require frequent fine manipulation, the VE testified during the hearing before the ALJ that there are 200,000 Dishwasher jobs available in the national economy, and 25,000 Machine Tender jobs. AR 76. Therefore, the ALJ would have found Plaintiff disabled at step five regardless of whether his RFC limited him to only occasional fingering/fine manipulation, as recommended by Dr. Schweller, given that at least 225,000 jobs had been identified by the VE as available in the national economy for a person with such an RFC. *See Allen C. v. Saul*, No. 1:18-CV-3243-FVS, 2020 WL 1916178, at *12 (E.D. Wash. Mar. 2, 2020) ("It is well-settled in the Ninth Circuit that 200,000 jobs identified by the vocational expert is a significant number of jobs available in the national economy") (citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 529 (9th Cir. 2014), where the Ninth Circuit found that whether 25,000 national jobs is sufficient "presents a close call," but ultimately upholding the ALJ's decision and finding that 25,000 jobs "represents a significant number of jobs in several regions of the country").

The Court rejects Plaintiff's argument in reply that the VE testimony establishes that a restriction to occasional fingering/fine manipulation would have resulted in a finding of disability. The testimony on which Plaintiff relies establishes only that, had the ALJ adopted an RFC limiting Plaintiff to only occasional fine manipulation ***plus*** light work (lifting no more than 20 pounds frequently and 10 pounds occasionally), then he would have been found disabled. *See* AR 76. The VE did not testify that a person limited to

*medium* work (lifting no more than 50 pounds frequently and 25 pounds occasionally) and only occasional fine manipulation would not be able to work, and the DOT listings at issue confirm that Plaintiff could perform the identified dishwasher and machine tender jobs if his RFC were exactly the same as the ALJ determined, but with a restriction to only occasional fingering/fine manipulation. Thus, even if the ALJ's fingering/fine manipulation restriction was in error, such an error was harmless and cannot constitute a basis for reversal, because "it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Garcia*, 768 F.3d at 932.

Although not necessary to the Court's determination that the ALJ committed no reversible error, the Court finds in the alternative that the ALJ gave specific, legitimate reasons for rejecting Dr. Schweller's more restrictive fingering/fine manipulation limitation. First, the ALJ concluded that notwithstanding Dr. Schweller's opinion, a limitation to frequent manipulative activities "adequately accounts for the claimant's carpal tunnel syndrome, where he has not had surgery and continues to have the ability to dust, mop, do laundry, and take out the trash." AR 27. Therefore, the ALJ relied on the specific, legitimate reasons of Plaintiff's conservative treatment history and daily activities to find Dr. Schweller's proposed limitations overly restrictive.

Plaintiff's arguments to the contrary that "[t]he proposition that medicine has a surgical solution for every condition lacks the support of substantial evidence[,]" and Plaintiff's own assessment that the identified activities "require handling and reaching, but do not require more than occasional fine manipulation" ignore the applicable standard of review. "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

Further, inconsistency between a physician's opinion and a claimant's daily activities may serve as a specific and legitimate reason for discounting the opinion. *See Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (finding that the ALJ "provided

specific and legitimate reasons" for discounting a treating physician's opinion, where the ALJ found the opinion "inconsistent with objective medical evidence and [the claimant's] daily activities and conservative treatment history.") *See also Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595, 600-02 (9th Cir. 1999) for the proposition that "an inconsistency between a treating physician's opinion and a claimant's daily activities [is considered] a specific and legitimate reason to discount the treating physician's opinion"). Although this rule is not applied where the record as a whole does not reveal an inconsistency between the physician's opinion and the claimant's daily activities, or where the ALJ mischaracterizes a claimant's activities,[2] Plaintiff fails to point to any record evidence showing that the ALJ's characterization of his daily activities is misleading or incomplete, or otherwise that Plaintiff is limited to only occasional fine manipulation in his daily life. Plaintiff merely asserts, without citation, that these tasks "do not require more than occasional fine manipulation to be performed." ECF No. 26 at 20. This argument is insufficient for the Court to find this reason illegitimate given the deferential standard of review. *See Winans v. Bowen*, 853 F.2d 643, 644-45 (9th Cir. 1987) (the Court may not reweigh the evidence); *Orn*, 495 F.3d at 630 (the Court must uphold the ALJ's decision where the evidence is susceptible to more than one interpretation).

As yet a third reason for discounting Dr. Schweller's opinion, beyond conservative treatment history and Plaintiff's daily activities, the ALJ explained that he was crediting the non-examining physicians' opinions regarding the appropriate fine manipulation restriction in part because they were consistent with the medical evidence, and Dr. Schweller's opinion was not. AR 27. The medical evidence discussed by the non-examining physicians as the rationale for recommending a limitation to frequent

---

[2] *See, e.g.*, *Ghanim*, 763 F.3d at 1162; *Katie G. v. Berryhill*, 2019 WL 2903767, at *15 (S.D. Cal. July 3, 2019), *report and recommendation adopted sub nom. Greene v. Berryhill*, No. 18-CV-801 JLS (JLB), 2019 WL 3774486 (S.D. Cal. Aug. 12, 2019).

handling/fingering/feeling bilaterally included "the lack of thenar [or hypothenar] atrophy, and no [treating physician medical evidence of record] to show ongoing severe symptomatology[,]" and that Plaintiff's physical examination showed good grip strength. *See* AR 89, 111. Thus, the ALJ's finding that the non-examining physicians' opinions better comport with the medical evidence also constitutes a specific and legitimate reason to discount Dr. Schweller's opinion, supported by substantial evidence.

In sum, the ALJ's decision to incorporate the non-examining physicians' suggested fine manipulation limitation into Plaintiff's RFC rather than Dr. Schweller's more restrictive limitation was supported by substantial medical and other evidence in the record. And, even if the ALJ had imposed the more restrictive fingering/fine manipulation limitation urged by Plaintiff and recommended by Dr. Schweller, the ALJ's determination of non-disability at step five would not have changed. Therefore, his failure to do so cannot constitute reversible error in any event. Accordingly, the Court rejects Plaintiff's claim of error related to the fingering/fine manipulation restriction in his RFC.

### B. <u>Lifting and Carrying Restrictions</u>

The Court further finds the ALJ did not err by limiting Plaintiff to medium work rather than light work. The ALJ gave specific and legitimate reasons for adopting the less restrictive lifting and carrying limitations assessed by the non-examining physicians over those assessed by Dr. Schweller.

First, the ALJ explained that Plaintiff's 5/5 motor strength in his bilateral upper and lower extremities was consistent with the non-examining physicians' RFC opinions, and inconsistent with Dr. Schweller's RFC opinion. AR 27. The fact that Dr. Schweller also (presumably) took into account his own assessment of Plaintiff's motor strength as 5/5 does not mean that the ALJ could not rely on that objective medical evidence to conclude that Dr. Schweller's RFC opinion was overly restrictive, as the non-examining physicians did. An RFC assessment is not a medical opinion, and indeed, determining the RFC is within the exclusive province of the ALJ. *See* 20 C.F.R. § 416.927(d)(2) ("We use medical sources, including your treating source, to provide evidence, including opinions, on the

17

nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . ., the final responsibility for deciding these issues is reserved to the Commissioner"). *See also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity"); *Henson v. [Astrue]*, No. 15-CV-03205-NJV, 2016 WL 4916923, at *3 (N.D. Cal. Sept. 15, 2016) ("Determination of a claimant's RFC is a legal decision which is expressly reserved to the Commissioner through her delegate, the ALJ.").

Second, the ALJ found that the non-examining physicians' RFC opinions were consistent with record evidence establishing Plaintiff's ability to perform such daily activities as preparing simple meals, sweeping, and vacuuming. AR 27. Although Plaintiff argues that the other daily activities discussed above (dusting, mopping, doing laundry, and taking out the trash) do not require frequent fine manipulation, Plaintiff never addresses the ALJ's analysis of these other daily activities with respect to the non-examining physicians' opinions that Plaintiff could perform a range of medium exertional activities. *See generally* ECF No. 26; *see also* AR 27. Medium work entails the lifting and carrying restrictions of 50 pounds occasionally and 25 pounds frequently that were included in Plaintiff's RFC. 20 C.F.R. § 416.967(c).

Substantial evidence is a low bar. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is 'more than a mere scintilla.'") (citation omitted). The ALJ expressly stated that he agreed with the non-examining physicians' giving only partial weight to Dr. Schweller's opinion as "inconsistent with his examination and the medical evidence," and he explained why. AR 27. Plaintiff's argument that his 5/5 motor strength in his bilateral upper and lower extremities is not a "specific and legitimate" reason for discounting Dr. Schweller's opinion, because "Dr. Schweller took into account [Plaintiff's] 5/5 motor strength" when he assessed Plaintiff's RFC, is merely a request that the Court reweigh the evidence to

reach the same conclusion as Dr. Schweller rather than Drs. Mazuryk and Estrin. However, in applying the substantial evidence standard, the Court "may not reweigh the evidence, substitute [the Court's] own judgment for the [Commissioner's], or give vent to feelings of compassion." *Winans*, 853 F.2d at 644-45 (internal alterations, quotations, and citation omitted). Even if there were a valid basis to incorporate Dr. Schweller's recommended limitations into the RFC, it would go beyond the Court's role on appeal to find error where the evidence is susceptible of more than one rational interpretation, and the Court prefers a different one than that adopted by the ALJ. *See Orn*, 495 F.3d at 630. The Court must uphold the ALJ's determination under such circumstances. *Id.* And again, the relevant question "is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson*, 112 F.3d at 1067.

Here, the ALJ gave specific, legitimate reasons supported by substantial evidence in the record for giving greater weight to the non-examining physicians' opinions than to Dr. Schweller's opinion regarding Plaintiff's exertional limitations, finding that the former were more consistent with the independent clinical findings and other evidence of record. That was all he was required to do. *See Roberts*, 66 F.3d at 184, *Thomas*, 278 F.3d at 957.

The Court also rejects Plaintiff's argument that the ALJ committed legal error by failing to discuss the factors set forth in 20 C.F.R. § 416.927(c). That provision deals with the factors applied when the ALJ "do[es] not give the treating source's medical opinion controlling weight[.]" *Id.* An agency consultative examiner, such as Dr. Schweller, is not a treating physician. 20 C.F.R. § 416.902 (2011)[3] ("Nontreating source means a physician,

---

[3] This regulation was amended in 2017 and again in 2018. Although the ALJ's decision was issued after the 2017 amendment, Plaintiff filed his claim in March 2015. The portion of the regulation quoted herein sets forth definitions of the terms "nontreating source" and "treating source" used in 20 C.F.R. § 416.927 at the time Plaintiff filed his claim. Although 20 C.F.R. § 416.927 was also amended effective March 27, 2017, the text of the statute makes clear that it should be applied to all "***claims filed before*** March 27, 2017." 20 C.F.R.

psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you. ***The term includes an acceptable medical source who is a consultative examiner for us***, when the consultative examiner is not your treating source. . . .Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.") (emphasis added).

Moreover, even if the ALJ had been required to consider the factors set forth in 20 C.F.R. § 416.927(c) before discounting Dr. Schweller's opinion, he was not required to explicitly discuss each of them. *See Harris v. Colvin*, 584 F. App'x 526, 527 n.1 (9th Cir. 2014) ("The agency was not required to specifically reference each factor listed in 20 C.F.R. § 404.1527(c)"); *Kelly v. Berryhill*, 732 F. App'x 558, 562 n.4 (9th Cir. May 1, 2018) ("[T]he ALJ is not required to make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c)") (internal quotations omitted).[4] Therefore, the fact that the ALJ did not mention the § 416.927(c) factors of the examining relationship or Dr. Schweller's specialization when explaining his reasons for partially discounting the opinion does not constitute legal error.

The Court accordingly rejects Plaintiff's second claim of error related to the lifting and carrying restrictions in his RFC.

Finding no reversible error in the ALJ's decision to discount Dr. Schweller's RFC

---

§ 416.927 (emphasis added). Accordingly, the Court cites to the version of the provision defining the terms used in 20 C.F.R. § 416.927 at the time Plaintiff filed his claim.

[4] Although these cases cite to 20 C.F.R. § 404.1527(c), the regulations at 20 C.F.R. § 404.1527 are identical to those at 20 C.F.R. § 416.927. The Social Security Administration has promulgated separate but identical regulations governing claims for disability insurance benefits under Title II of the Social Security Act and claims for SSI under Title XVI.

1  opinion in favor of the opinions of the non-examining agency physicians, the Court will

2  **DENY** Plaintiff's motion for reversal and **AFFIRM** the Commissioner's decision.

3  **VI.**    <u>**CONCLUSION**</u>

4        For the foregoing reasons, the Court finds that the ALJ did not commit reversible

5  error. Accordingly, the Commissioner of the Social Security Administration's final

6  decision is **AFFIRMED.** The Clerk shall enter judgment accordingly and terminate the

7  case.

8        **IT IS SO ORDERED.**

9  Dated:  September 30, 2020

10  _____

11  Honorable Allison H. Goddard

11  United States Magistrate Judge